**In the Matter of REDWOOD FURNITURE COMPANY, Inc., Bankrupt.**

**Petition of KENDALL LUMBER COMPANY.**

**No. 1219.**

United States District Court
W. D. North Carolina,
Asheville Division.

Dec. 6, 1965.

H. Kenneth Lee, Asheville, N. C., for trustee.

Ernest S. DeLaney, Jr., Charlotte, N. C., for petitioner, Kendall Lumber Co.

CRAVEN, Chief Judge.

Kendall Lumber Company, by this petition for review filed with the referee August 16, 1963, seeks to have set aside an order of the referee in bankruptcy entered August 9, 1963,[1] by which Kendall was permanently enjoined from proceeding with its pending action against Redwood Furniture Company, Inc. and two individuals in the Superior Court of Mecklenburg County, North Carolina, and by which Kendall's alleged lien against certain property was invalidated. The referee has sent up neither a summary of the evidence nor a transcript as required by Section 39, sub. a(8) of the Bankruptcy Act. But, from the order appealed from, briefs of counsel, and the transcript of the July 19, 1963, hearing (no evidence was taken), enough appears to show plain error.

## PROCEDURAL DEFECTS

The trustee insists the merits are beyond the reach of the court, and moves to dismiss the petition for review on several procedural grounds: (1) late payment of petition for review filing fee "required" by Section 40, sub. c(3) of the Bankruptcy Act, (2) failure to serve on the trustee or his attorney a brief, and (3) laches.

The Schedule of Fees and Charges printed under Section 40 of the Act does contemplate that the filing fee be paid at the time of filing the petition

---

1. The petition for review was not sent to the clerk's office of the court until sometime in September 1965.

for review. But timely payment of such fee is not made a condition precedent to entertaining a petition for review. It has now been paid. Dismissal on this ground is denied.

■ The Bankruptcy Act contains no requirement that petitioner file a brief. It is true that the local bankruptcy rules adopted April 1, 1965, now require a brief to be filed with the opposing party when petition for review is filed, but no such rule was extant at the time this petition was filed. Dismissal on this ground is denied.

■ The third objection is laches. Section 39, sub. a(8) of the Act puts *on the referee* the primary burden of promptly dispatching to the district court certificates on petitions for review, together with a statement of questions presented, findings and orders thereon, the petition for review, a transcript of the evidence or summary thereof, and all exhibits. This duty is mandatory. See Security Mortgage Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. But this duty is also upon the petitioner. "The failure of the referee to obey the directions of this section 'will not excuse laches on the part of one who seeks to review the judicial action of the referee, and who, by applying to the judge, could easily obtain an order to speed the cause.'" 2 Collier, Bankruptcy Section 39.25, p. 1506 (14th ed., 1964). But mere delay without injury or prejudice to the opposing side is not laches. Holt v. May, 235 N.C. 46, 68 S.E.2d 775 (1952); East Side Builders v. Brown, 234 N.C. 517, 67 S.E.2d 489 (1951). There has been no showing of legal harm attributable to Kendall. Delay is, of course, always harmful. One result here

is that five or six years will have elapsed between petition and discharge—where eighteen months would have been amply sufficient. Such delay tends to exhaust an estate with counsel fees and expense of administration to the injury of all claimants. But, most of the delay is not attributable to Kendall, and none is solely the fault of Kendall. Nor has Kendall caused opposing claimants to change their position to their prejudice. The trustee's motion to dismiss for this reason is also denied.

### MERITS

■ On August 23, 1960, Kendall filed an action in the Mecklenburg County Superior Court against Redwood, H. A. Heinzerling, Jr., and H. T. Atkins, claiming the right to rescind a contract because of fraud. Kendall caused to be issued a writ of attachment against certain property of Redwood, and also caused to issue a writ of Claim and Delivery.[2] Both writs were purportedly executed, and the sheriff levied upon property in the possession of Redwood. Thereafter, Redwood went into state court receivership.

Subsequently, on February 20, 1961, Redwood was adjudicated a bankrupt. On August 14, 1961, the referee issued a temporary restraining order against further prosecution of the state court action by Kendall. After a hearing on July 19, 1963, the temporary injunction was made permanent by the referee. The referee "found as a fact" that Kendall had acquired no lien by virtue of the state court proceedings, and, further, "whatever lien, if any, the plaintiffs might have obtained by reason of the attachment suit was dissolved."[3] The referee held Kendall estopped to make any claim to a lien on

---

2. A North Carolina modification of the common law remedy of replevin.

3. The referee based this finding on an affidavit which Kendall signed in the state court action before the order requiring Redwood's property to be delivered to the court was signed. The affidavit read, in part: "4. That said property has not been taken for tax, assessment, or fine,

pursuant to a statute, or seized under an execution, or attachment against the property of the Plaintiff, unless attached under Order of this Court in the pending lawsuit, in which case attachment of the above described property is hereby dissolved and released upon motion of the plaintiffs, as soon as possession is obtained by the Sheriff under this Order of Claim and Delivery."

property levied upon by the sheriff while in the possession of Redwood.

Kendall urges this court to dissolve the referee's order which enjoined prosecution of the state court action, and to vacate the referee's decision that Kendall's lien against the property of Redwood is invalid.[4]

■ As a general rule, bankruptcy proceedings, merely by virtue of their maintenance, will not terminate an action against the bankrupt begun in the state court before the filing of the petition in bankruptcy. Connell v. Walker, 291 U.S. 1, 54 S.Ct. 257, 78 L.Ed. 613 (1933); Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931). Action by the bankruptcy court is required.

■ Whether the referee should act to restrain prosecution of a state court action is a situation "which calls for the exercise of the rule of comity that the court first lawfully acquiring jurisdiction shall retain it." 9 Am.Jur.2d 105, "Bankruptcy" Section 61. This rule applies to "a suit instituted (in a state court) before the commencement of proceedings in bankruptcy, in which an attachment has been levied more than four months *prior* to the filing of the petition in bankruptcy." Ibid; see also Straton v. New, supra.

■ In this case, the inchoate lien was obtained, if at all, by attachment and/or claim and delivery, more than four months before the filing of the petition in bankruptcy. "Where attachments are made more than four months before the filing of the petition, the subsequent prosecution of the claim to judgment and sale will not be enjoined because the lien arises at the time of the original attachment." 1 Collier, "Bankruptcy" Section 2.63, p. 330 & n. 14 (14th ed. 1964). If a valid lien is created more than four months before a petition in bankruptcy is filed, a transaction perfecting or enforcing the lien, even though

it is within four months of bankruptcy, or even after the petition is filed, does not render the lien subject to dissolution. See Metcalf Brothers & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). "A lien may be valid as having been obtained more than four months before the filing of a petition in bankruptcy where it relates back to the commencement of the proceedings by which it arose * * *." 8A C.J.S. Bankruptcy § 253, p. 317.

■ Moreover, Kendall's suit was based upon alleged fraud. Claims against a bankrupt resting upon fraud are, by the specific terms of the Act, *not* discharged by bankruptcy. Bankruptcy Act Section 17. The authority to stay suits against the bankrupt granted by Section 11 of the Act is limited to the restraint of suits founded upon claims from which a discharge would be a release. A claim based upon fraud is not such a claim. If the claim is one which will not be released by discharge, the court must refuse to stay the prosecution of the state action. In Re Metz, 6 F.2d 962 (2d Cir. 1925); Family Small Loan Co. of Richmond v. Mason, 67 F.2d 207 (4th Cir. 1933); 9 Am.Jur.2d 260 "Bankruptcy" Section 302.

■ The referee proceeded to adjudicate summarily the question of lien validity, although no bar order was ever entered and no notice was ever given Kendall to come in and show cause why its alleged lien should not be invalidated. At the hearing on July 19, 1963, counsel for Kendall stated to the referee that the only thing before the court was whether the restraining order should be continued or not, and there was apparent acquiescence by both the referee and opposing counsel. Kendall never filed a claim in the bankruptcy proceeding and never consented to summary jurisdiction of the bankruptcy court except with respect to whether or not the state court action should be restrained.

---

4. The property is now represented by a money deposit in the hands of the trustee. How it got from the sheriff, through the receiver, to the trustee is inexplicable on the record sent me, but all concerned agree that it did.

Under these circumstances, even if the referee had jurisdiction (power) to adjudicate lien validity, he should not have so summarily exercised it.

But such jurisdiction depends largely upon the bankrupt's possession of the disputed property. See 9 Am.Jur.2d 87, 91, "Bankruptcy" Sections 47 and 50. Certainly, there was never "jurisdiction by consent". Id., Section 53.

The referee's subsidiary findings of fact do not support his ultimate finding that, as of the date of bankruptcy adjudication,[5] the bankrupt was in possession, actual or constructive, of the property in dispute.[6]

The effect is not only to invalidate the unsupported finding as clearly erroneous, but also to cast doubt upon the referee's summary jurisdiction.

Kendall will be permitted to prosecute its action against the bankrupt which has been pending so long in the Superior Court of Mecklenburg County. The question of lien validity can be determined as well or better in a plenary proceeding in the state court as it can be before the referee, and such a determination by the state court will avoid the difficult problem of whether the referee has jurisdiction to determine lien validity. After the question of lien validity has been determined in accordance with North Carolina law, the referee will then be in a better position to determine the effect of bankruptcy upon such lien—if there is one. 9 Am.Jur.2d 718, "Bankruptcy" Section 957.

An order will be entered dissolving the referee's restraining order and permitting the prosecution of the state court action against the bankrupt. The trustee will be authorized to seek permission in the state court to intervene and litigate the question of lien validity in that court.

No valid reason is suggested to support the referee's restraint of Kendall's suit against the two individual officers of the bankrupt. That injunction also will be dissolved.

---

5. The critical time is date of filing of the petition in bankruptcy rather than date of adjudication. 9 Am.Jur.2d 87, "Bankruptcy" Section 47.

6. The record sent me does not disclose who actually had the property on the date of filing of the petition—whether sheriff, receiver, bankrupt, or Kendall. The briefs suggest it was not the bankrupt.